United States District Court
Middle District of Florida
Jacksonville Division

**DAVID BRYANT WICKS,**

    *Plaintiff,*

v.                                        **NO. 3:17-CV-718-J-34PDB**

**LENA POWELL, MR. SHAW, MS. LATOYA,
MRS. AVIE LEWIS, W. COLLINS COOPER,
MR. CHARLIE COFER, & MRS. CHRIS
CLAYTON,**

    *Defendants.*

---

## Report & Recommendation

Plaintiff David Wicks—without a lawyer and proceeding in forma pauperis—has filed four complaints and ten other filings that add new factual allegations. Because he fails to state a claim on which relief may be granted, I recommend dismissal.[1]

**I.    Filings**

*A.    Original Complaint*

The original complaint is on the form for a complaint for a violation of civil rights by a prisoner. Doc. 1. Named as defendants in "individual" and "official" capacities are two people associated with Golden Retreat Shelter Care, two people associated with Starting Point Forensic Mental Health Specialists, an assistant public defender, and the Public Defender for the Fourth Judicial Circuit of Florida.

---

[1]Quotations from Wicks's filings include emphases and typographical errors in the originals but, to make them easier to read, not errant capitalization.

Doc. 1 at 2–3. Named in an individual capacity only is an assistant state attorney. Doc. 1 at 3.

## B.     *Amended Complaint & Other Filings*

Within days of filing the original complaint and without prompting, Wicks filed a handwritten amended complaint against the same defendants titled, "Amended Complaint for Violation of Plaintiff's Civil Rights and by Violation of Plaintiff's Constitutional Rights by Placing a 'Hit' Out on the Plaintiff's Life to <u>Kill Him</u>!!" Doc. 3. The amended complaint is similar to the original complaint, but it is not on the form for a complaint for a violation of civil rights by a prisoner, and it includes more details. *Compare* Doc. 1 *with* Doc. 3. In it, Wicks alleged these facts. Doc. 3.

On March 1, 2017, Wicks resided in Atlanta. Doc. 3 ¶ 1. He had traveled there from Jacksonville on the "Mega Bus," using a debit card at 2:30 a.m. to buy a $35 ticket. Doc. 3 ¶ 1.

When Wicks arrived in Atlanta, he applied at a downtown church for a birth certificate and a mailbox for homeless adults. Doc. 3 ¶ 2. He was arrested at a Walmart in DeKalb County, spent eight days in DeKalb County jail, and received a time-served sentence. Doc. 3 ¶ 2. During release processing, officers had him identify and provide a written statement about an inmate who had sexually assaulted him. Doc. 3 ¶ 2. They also informed him that a criminal charge was pending against him in Nassau County. Doc. 3 ¶ 2. (Other allegations in other filings indicate the Nassau County charge involves a Walmart in Nassau County and is unrelated to the DeKalb County charge involving a Walmart in DeKalb County.)

Wicks "made it to his freedom," but one week after his release, police officers stopped him in Atlanta, checked his information through the National Crime Information Center, and determined he was wanted in Nassau County. Doc. 3 ¶ 3. They returned him to DeKalb County jail and held him as a fugitive. Doc. 3 ¶ 4.

On March 28, 2017, at a proceeding before DeKalb County Magistrate Mary McCall Cash, Wicks signed an extradition waiver. Doc. 3 ¶ 4. An assistant public defender: (1) informed him the waiver stated he was wanted in Nassau County for the commission of larceny on March 3, 2017, (2) told him the offense is a misdemeanor, (3) explained records showed he was in the Grady Hospital emergency room on March 2, 2017, and (4) advised him to go to Florida and straighten out the matter, which he estimated would take just one court appearance. Doc. 3 ¶¶ 5, 6. Based on that information and to avoid having to stay in jail for up to 90 days to await a "Governor's Warrant," he signed the waiver. Doc. 3 ¶ 5.

On April 22, 2017, Wicks was transported from the DeKalb County jail to the Nassau County jail, where he was given an identification number. Doc. 3 ¶ 7. He appeared for a probable cause hearing at the state court in Nassau County, at which he was advised he was charged not with having committed larceny on March 3, 2017, but with having committed grand larceny on January 30, 2017. Doc. 3 ¶ 7. The wrong charge and wrong date in the extradition waiver were designed to trick him into signing it, resulting in false imprisonment, malicious prosecution, and orders by a court lacking subject-matter jurisdiction (the court in Nassau County). Doc. 3 ¶ 7.

On June 8, 2017, in the grand-larceny case, Florida Circuit Judge Robert Foster adjudicated Wicks incompetent and conditionally released him to live at Golden Retreat. Doc. 3 ¶ 8. Wicks received no copy of the order. Doc. 3 ¶ 8.

Defendant Shaw owns Golden Retreat. Doc. 3 ¶ 11. There, Wicks informed defendants Lewis and "Ms. Latoya" of the sexual assault that had taken place in the DeKalb County jail. Doc. 3 ¶ 10. No one provided him with "dos and don'ts" for his conditional release. Doc. 3 ¶ 10. No one informed the medical department he is allergic to tomatoes, lactose, and particular medications. Doc. 3 ¶ 10. Defendant Lewis "jumped or verbally yelled" at him for "constantly telephoning" her to ask questions about what he could and could not do. Doc. 3 ¶ 11. A license posted on a board expired on October 4, 2015. Doc. 3 ¶ 11. The toilets are filled with human waste.

Doc. 3 ¶ 11. Residents wear the same dirty clothes, do not take baths, and smell bad. Doc. 3 ¶ 11. Fighting, theft, robbery, and illegal drug use are rampant. Doc. 3 ¶ 11. A resident named "Mr. West" told defendants Shaw and Powell that Wicks had asked someone with the Florida Disability Organization to send Wicks a bankruptcy petition so he could avoid having to pay $1000 for living in a place that makes him sick. Doc. 3 ¶ 11. "That is when" residents told Wicks two black men in a maroon vehicle had visited and said they were looking for him. Doc. 3 ¶ 12. Defendants Powell and Shaw were overheard telling a night security guard "to take [Wicks] away from the shelter and get rid of him the best way the gentleman knew how[.]" Doc. 3 ¶ 12. "It was a <u>HIT</u>" on him. Doc. 3 ¶ 12. Defendants Lewis and "Ms. Latoya" know about "the death threats out against" him. Doc. 3 ¶ 12. He reported all of this to "Lt. Nye" at the Nassau County jail without mentioning names. Doc. 3 ¶ 12. The "defendants" at Golden Retreat took his legal documents without his permission. Doc. 3 ¶ 12.

On June 21, 2017, Wicks was returned to the Nassau County jail on an order by Judge Foster to show cause why he could not remain at Golden Retreat based on a complaint filed by defendants Lewis, Powell, Shaw, and "Ms. Latoya." Doc. 3 ¶ 9.

In the amended complaint, under, "Relief Requested," Wicks wrote:

> Plaintiff immediate modification or release from conditional release no state hospital or jail, or prison. Plaintiff want to have U.S[.] Marshals take plaintiff out of Nassau County custody and allow plaintiff to return back to Georgia. Plaintiff want a monetary fee of $50,000.00 from each defendant to include the monetary amount for each day in custody illegally. When this complaint is served plaintiff will <u>fear</u> his life so he wish to be protected by Jesus Christ and this Court.

Doc. 3 at 10.

To the amended complaint, Wicks attached an "Inmate Grievance Form" he appears to have filed with Nassau County officials. Doc. 3-1. In it, he complains about denial of medical care during the trip from DeKalb County to Nassau County; wrongful treatment by the transporting officer; denial of medical care in the Nassau

4

County jail; placement on protective-custody status in a cell despite knowledge of his post-traumatic stress disorder, claustrophobia, bipolar disorder, lung cancer, and bleeding anus; denial of envelopes, photocopies, and access to the law library; and denial of showers. Doc. 3-1 at 2. He adds, "Racially discriminated" and "Emergency need state police to make report." Doc. 3-1 at 2.

With the amended complaint, Wicks filed a letter to the clerk. Doc. 3-2. He wrote that he wanted to make sure the clerk received the complaint in two envelopes because one would have been too heavy. Doc. 3-2. He added,

> A threat against my life was made by the defendants Mr. Shaw and Ms. Lena Powell of the Golden Retreat Shelter Care … by which defendant Ms. [Latoya] Williams supervisor @ Standing Point and Mrs. Avie Lewis case manager are both aware of the threats made by the defendants at the shelter. This information was given to me by word of mouth and visual evidence told to me by Mrs. Lewis that a red color vehicle was loaded with two black males looking for me at the shelter with a lie stating I owed them money and they wanted to come get me when I don't know anyone in the whole State of Florida and I have had my money, legal materials and given food that I'm allergic too. No medication to stop bleeding from sexual assault, no mental health medications, not all my medical seizure meds, no medication or doctor's visit for [glaucoma] in eyes which my retina is in severe pain my eyes hurt to write. No doctor which is defendant Ms. Avie Lewis job to do all the above upon taking me to the shelter. No SSI payments. No court documents of conditional release ever given to me by Ms. Powell, shelter manager whom kept all my legal documents so I could not read them.
>
> How can I obey the terms of conditional release if Ms. Lewis (defendant) know that defendant Powell manager of the shelter have all my instructions, orders, and rules of conditional release. I was not given my papers until I was kicked out of the shelter where it was told to the shelter defendants that I was going to report that the license of the shelter had expired along with all the forementioned issues I mentioned then Lena gave me my court papers but kept the rest of my legal papers.
>
> Now I'm sitting in a single cell 24 hours a day 7 days a week with no meds no doctor, no pampers, burning eyes, no phone calls, no mental health doctor. Nothing my court dates was passed until June 29, 2017 it might be passed again.

5

Doc. 3-2.[2]

---

[2] Wicks filed a previous civil rights action against eight defendants alleging wrongful arrest, denial of medical care, ineffective assistance of counsel, and malicious prosecution stemming from his arrest, detention, and prosecution for theft at a Walmart. *See Wicks v. Halstead et al.*, 3:15-cv-1072-J-34JRK. That action involved different dates and different alleged facts. On October 13, 2015, this Court dismissed that action without prejudice, explaining: to the extent he sought release, he had to exhaust state remedies and file a habeas corpus petition; to the extent he sought monetary damages and to raise claims about confinement conditions, he had to use a civil rights form and name proper defendants; and to the extent he wanted the Court to investigate alleged wrongdoings at the pretrial detention facility or elsewhere, he had to exhaust his administrative remedies. Doc. 5 (3:15-cv-1072). He did not appeal.

One week later, on October 22, 2015, Wicks filed a civil rights action against seven defendants—some from the dismissed action—alleging race discrimination; incarceration for a crime he did not commit; malpractice by his criminal defense counsel; sexual, physical, and other abuse while in custody; slavery while in custody; and denial of medical care, mental-health treatment, religious services, and access to courts while in custody. *See Wicks v. Tamargo et al.*, 3:15-cv-1260-J-32PDB. In that action—like this action—he filed notices and motions with new factual allegations. Docs. 4, 7, 10 (3:15-cv-1260). Following an order to show cause, this Court dismissed the action without prejudice because Wicks did not inform the Court of his change of address or prosecute the action. Docs. 12, 13 (3:15-cv-1260). He did not appeal.

Two months before Wicks filed the original complaint in this action, on April 18, 2017, Wicks mailed a letter to the clerk alleging facts concerning the "illegal" extradition, denial of medical care and a rape kit while transported from DeKalb County to Nassau County, and poor conditions at the Nassau County jail. *See Wicks v. Nassau County Jail & DeKalb County Jail*, 3:17-cv-454-J-39JBT. He asked the clerk to send him: (1) a civil rights complaint form, an in forma pauperis application, a summons form, and a service-of-process form; (2) contact information for a civil rights lawyer; and (3) information on how he could reinstate *Wicks v. Tamargo et al.*, 3:15-cv-1260. Doc. 1 (3:17-cv-454). The clerk docketed the letter as a complaint. Doc. 1 (3:17-cv-454). The Court entered the "Standing Order to Clerk to Notify Inspector General of the Florida Department of Corrections and Warden of Affected Institution Regarding Inmate Claim of Suicidal Intent or Other Imminent Physical Harm" and dismissed the action without prejudice because Wicks had not used a civil rights complaint form, had not complied with requirements for obtaining injunctive relief, any request for injunctive relief against the DeKalb County jail was moot, and any request for monetary relief against DeKalb County jail had to be filed in the United States District Court for the Northern District of Georgia. Docs. 2, 3 (3:17-cv-454). The Court provided him with the forms and docket sheet from *Wicks v. Tamargo et al.*, 3:15-cv-1260. This action followed.

The only other action Wicks appears to have filed in this Court is *Wicks v. Hobbs et al.*, 5:98-cv-157-Oc-10A, in which he sued five people associated with the Coleman Federal Correctional Complex, contending he was entitled to habeas corpus relief based

In response to the amended complaint, the Court entered an order recognizing it could be construed as a request for entry of a preliminary injunction or a temporary restraining order and denying any such request without prejudice to filing a motion. Doc. 5. In a footnote, the Court observed Wicks did not appear to be in imminent danger because alleged threats against him were by individuals at Golden Retreat, where he no longer resided; *Younger* abstention would prevent the Court from interfering with a pending state criminal proceeding; and the Court could not order release regardless of confinement conditions. Doc. 5 at 3 n.1.

Wicks moved for summary judgment, repeating many of the factual allegations from the amended complaint and adding that a record in the grand-larceny case indicates the Walmart complainant could not positively identify Wicks from a video because of the video's poor quality. Doc. 6. The Court struck the motion as premature. Doc. 12.

Wicks moved to file a federal criminal complaint against the defendants, adding additional alleged problems at Golden Retreat (buying, sharing, and smoking crack cocaine; visits by armed drug dealers seeking money for crack cocaine sold on credit; residents infected with HIV putting human waste in the toilets and not flushing them; flies covering the human waste and circling the toilets; theft of his identification documents, credit-union card, and laptop; prostitution; poisoning from bacteria in the food; and roach and bed-bug infestations). Doc. 7. He clarified he "is not attempting to file a civil rights complaint to be released from state or county confinement." Doc. 7 ¶ 1. The Court denied the motion because Wicks does not have a judicially cognizable interest in the prosecution of others. Doc. 13.

---

on alleged denial of access to courts, the right to a safe and healthy prison environment, the right to help other inmates prepare their legal documents, the right to be free from retaliation for redressing conditions of confinement, and the right to receive proper medical treatment. Doc. 1 (5:98-cv-157). This Court dismissed the action without prejudice because he presented civil rights—not habeas-corpus—claims. Doc. 3 (5:98-cv-157). He did not appeal.

## C.    *Second Amended Complaint & Other Filings*

Again without prompting, Wicks filed a handwritten second-amended complaint titled, "Second Amended Complaint Emergency in Nature Plaintiff's Life in Danger." Doc. 9. In it, he alleged that on July 9, 2017 (his birthday), he woke up and witnessed that his cell neighbor—"Edward Brokly"—was dead.[3] Doc. 9 at 1. Wicks contended Brokly had died from fatal black mold and mildew blowing through air conditioning vents in the Nassau County jail. Doc. 9 at 1. Wicks alleged Brokly had not been eating, Brokly had had breathing problems, and a nurse had refused to give him medication after getting angry because Brokly could not rush out of bed to get the medication. Doc. 9 at 1–2. Wicks alleged he (Wicks) has not received treatment for his eye, is in "gross pain," and is "going blind." Doc. 9 at 2. Wicks alleged staffers distribute medications and confuse them. Doc. 9 at 2. Wicks concluded, "I will do whatever this Court informs me to do without questions asked. I just need to be removed from this facility A.S.A.P." Doc. 9 at 3.

Wicks also sent a hand-written letter to the clerk titled, "Defendants have committed first degree murder and now plaintiff have fear that he might be next to die." Doc. 10 at 1. He repeated the alleged facts in the second-amended complaint and added new ones (Brokly had urinated on himself because he was taken off Ensure, Brokly had not taken a shower because he could not breathe, Brokly had been foaming at the mouth when pronounced dead, and the nurses had hated Brokly and skipped his medications because of his race and the criminal accusations against him). Doc. 10 at 2. Wicks stated he (Wicks) feared for his life because he had made a statement to an investigator concerning Brokly's "murder." Doc. 10 at 3. He stated he wants to help federal law enforcement officers stop Nassau County jail's staffers and

---

[3]Wicks may be referring to Guarino Broccoli, the criminal defendant in *United States v. Broccoli*, No. 3:17-cr-85-J-39PDB, who died in custody on July 9, 2017. *See* Doc. 38 (3:17-cr-85).

8

medical personnel from repeating the conduct with respect to other inmates. Doc. 10 at 4.

The Court construed the letter as a request for emergency relief, denied the request without prejudice to filing a motion, and directed the Clerk of Court to immediately send the letter, the second-amended complaint, and the order to the Sheriff of Nassau County. Doc. 11. The Court explained that to the extent Wicks was asking the Court to initiate a criminal investigation or prosecution, "he cannot obtain such relief by petitioning the Court." Doc. 11 at 1.

The Court entered an order directing Wicks to file an amended in forma pauperis application and third-amended complaint. Doc. 14. The Court explained the complaint, amended complaint, and second-amended complaint did not satisfy the rules and pleadings standards, including by failing to clearly connect each defendant to a factual allegation or allegations. Doc. 14 at 2–3. The Court directed Wicks to comply with the rules and pleading standards and cautioned him that failure to do so could cause dismissal. Doc. 14 at 3.

### D.   *Third Amended Complaint & Other Filings*

Wicks timely filed an amended in forma pauperis application and third-amended complaint. Doc. 15. In the third amended complaint, he begins by stating he is filing it "to support the allegations [he] has previously filed with this Court." Doc. 15 at 1. He continues:

> 2.   In plaintiff's third amended complaint, he contends that is detained at Nassau County Detention Center under conditions that are not only violating his constitutional rights, but are depriving plaintiff of his rights to receive medical attention to life threating issues together with plaintiff's medical problems he arrived … with.
>
> 3.   To be able to make things appear clear, plaintiff will get to the point of his complaint against the defendants. This portion of plaintiff's complaint deals directly with the Doctors and Nurses

9

> whom are employed with Correct Care Solutions Medical department to include a "new" defendant plaintiff wish to add to his list of defendants, Mr. Bill Leeper, the Sheriff of Nassau County, and also the director of the Nassau County Detention Center.
>
> 4. Plaintiff states that the entire jail is contaminated with a poison mold that cover all the cell walls inside the jail that causes lung cancer and chest pains.
>
> 5. No medical treatment has been performed on any of the inmates @ the jail dealing with the illegal mold on the jail walls. Plaintiff have witnessed the sheriff deputies beat inmates whom have tried to mail some of the mold out to family and friends.
>
> 6. The Administrative Staff refuse to give plaintiff with copies of the grievances and complaints that are in the kiosh to Lt. Crews and Cpt. Foster of the jail whom refuses to provide Wicks … with copies of the multiple grievances and complaints.
>
> 7. Plaintiff suffers from chest pain loss of vision from his glaucoma, he complains about his swollen right knee but nothing has been done about his painful knee. Ms. Lena Powell stole all plaintiff's legal mail, his laptop, [his] E.B.T. card, birth certificate, personal clothes, and had another gues[t] steal money out of plaintiff Navy Federal Credit Union account w/o plaintiff's permission.
>
> 8. WHEREFORE, plaintiff is requesting this Court to accept this Amended Complaint, the third amendment, along with the previous complaints he has filed or join all the complaints together whatever the court deems best for plaintiff's argument. Plaintiff want the same amount of monetary relief as stated in his original complaint.

Doc. 15 at 2–6.

Wicks filed a document titled, "Informa Pauperis Receipt and Death Threat to me." Doc. 17. In it, besides repeating some of the factual allegations in previous filings, he contends "Officer Campbell" threatened him because he had filed this case and had submitted a grievance against him; "Inmate Nelson" threatened to kill him; two inmates told him he "will not live to see another day" because he "told on Inmate Weaks" after Weaks tried to involve him in an attempted escape; Lt. Crews listened

to Weaks's telephone calls; cameras recorded Weaks punching him in the face, breaking his eyeglasses, and "maliciously" throwing cups at him; Weaks now has "Nelson"—"a Muslim that has been in this town when the old jail was being used"—to help him; "Officer Campbell" refuses to let him shave with a razor on shaving day; he had to wait hours for seizure medication even though the nurse with it was right in front of him; he has been labeled a "snitch" and an "asshole"; defendants "Ms. Latoya," Lewis, and Clayton tried to Baker Act him twice; Dr. Benjamin Lye had "diagnosed [him] as being competent"; and there is no evidence against him to support the grand-larceny charge. Doc. 17 at 2–3, 5. He asks for help in telling his mother if something happens to him and states he wants to go to the "Veteran's Homeless System," wants to return to Georgia, and does not want to die. Doc. 17 at 5–6.

In response to the filing, the Court entered the "Standing Order to Clerk to Notify Inspector General of the Florida Department of Corrections and Warden of Affected Institution Regarding Inmate Claim of Suicidal Intent or Other Imminent Physical Harm." Doc. 18.

Wicks filed a document titled, "More Receipts Proving Indigency to include more evidence with first and last name that was recorded by Nassau County Detention Center employee on speaker box in cell of death threats made to David Wicks on or about September 02, 2017 by inmate Nelson Roosevelt." Doc. 19 at 1. In the filing, he contends Nelson said he is a Muslim, has lived in Yulee, Florida, for more than 20 years, and has "multiple brothers who will be in court with him and me." Doc. 19 at 2. He contends Nelson threatened that if Wicks filed charges against him, "that would be the day [he] … will receive a bullet straight in [his] head." Doc. 19 at 2. He contends Nelson said he knows the correctional staff and they "favor him a lot." Doc. 19 at 2. He contends when he reported the statements to Sergeant Hubbard, Sergeant Hubbard said he had already reported the issue. Doc. 19 at 2. He asks to be separated from correctional staff and "gang related inmates" upon conditional release on September 7, 2017. Doc. 19 at 2. He alternatively asks that

11

Judge Foster order "Nassau County staff" and Nelson to leave him alone. Doc. 19 at 3.

Wicks filed a motion titled, "Emergency Protection from Abuse Act – Injunction Act." Doc. 20. In the filing, besides repeating some of the factual allegations in previous filings, he alleges that when he signed the waiver of extradition, he had not been represented by counsel and had not waived any right to counsel; the Walmart complainant should have called a toll-free number to obtain authorization to cash a $1000 check underlying the grand-larceny charge but failed to; the corrections officers in the Nassau County jail are "hating [him] so bad" because he keeps "saying they murdered my friend Edward Boykin"; he had told Judge Foster about inmates "faking and lying" to a forensic evaluator to affect their criminal charges; the grand-larceny charge should be dismissed because the claims against his counsel in this case create a conflict of interest; and Dr. Benjamin Lye found him competent, which made the defendants upset and—out of "vengeance" for his statement to a federal agent "that the jail murdered his next door neighbor"—caused him to be reevaluated and found incompetent, leading to his admission into a state hospital. Doc. 20 at 2–6. He asks the Court to enter an order protecting him from abuse by "'all' of the forementioned [sic] defendants named herein this Civil Rights Complaint." Doc. 20 at 2. That motion is pending.

Wicks filed a document asking the clerk for instructions on how to comply with Federal Rule of Civil Procedure 4 and for copies of the extradition waiver and narrative statements from the Walmart complainant referencing the poor copy of the video. Doc. 21 at 1–3. He adds, "I'm trying to prove to the Court that the asst. manager of Vystar Bank next to the Social Security Office was shown an I.D. of me other than the I.D. I had in my pocket; my wallet, because I renewed my I.D. of Florida on 6/21/2017 because my I.D. was stolen while I had a seizure and was taken to Shan's Hospital on the same date I was in Emergency Room being treated for my grand-mal seizures my attorney do not want to release it to me just act like I'm crazy and go to

12

the state hospital for the rest of my life." Doc. 21 at 3. He concludes, "Plaintiff … respectfully request a good outcome please I do not wish to be considered incompetent or crazy." Doc. 21 at 4.

Wicks's latest filing (October 25, 2017) states, "This letter is to inform you of my change of address and to state that my public defender Mr. Thomas Townsend, do <u>not</u> have an indictment nor have he filed a motion to dismiss although the Circuit Court is without subject matter jurisdiction. … I should not even be here because Doctor Lye MD @ the mental health facility found me competent. I am told I will only stay here for a few months." Doc. 22.

Wicks attaches part of a June 8, 2017, order by Judge Foster finding him incompetent due to mental illness and conditionally releasing him to the custody of defendant Lewis of Starting Point to reside at Golden Retreat. Doc. 22-2. He also attaches a September 7, 2017, order by Judge Foster revoking his conditional release and committing him to the Department of Children and Families for inpatient care. Doc. 22-1. Based on a report by Dr. William Meadows, who had evaluated Wicks, and a written statement by defendant Lewis, Judge Foster found Wicks had "violated the terms of conditional release by failing to comply with the rules of his assisted living facilities by leaving the facilities without permission on two separate occasions and by ingesting cocaine" and satisfied the criteria for commitment to a facility for inpatient care. Doc. 22-1 at 1. Judge Foster stated the state court retains jurisdiction over the grand-larceny case and Wicks may not be discharged absent court order. Doc. 22-1 at 3. Wicks also attaches evidence relating to the grand-larceny charge. Doc. 22-1 at 1; Doc. 22-2 at 1.

## II. Law & Analysis

Under 28 U.S.C. § 1915(e)(2)(B), a court must dismiss an action by a plaintiff proceeding in forma pauperis if at any time the court determines the action is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief against a defendant immune from such relief.

To decide if an action fails to state a claim on which relief may be granted, a court must construe the pleading liberally and apply the Federal Rule of Civil Procedure 12(b)(6) standard. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). To survive dismissal under that standard, the pleading must allege facts, accepted as true, that state a claim that "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That standard asks for less than a probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Federal Rule of Civil Procedure 17(c)(2) requires a court to appoint a guardian ad litem or issue "another appropriate order" to protect an incompetent person who is unrepresented in an action. A court may abuse its discretion if, presented with evidence from a court, mental health professional, or public agency indicating incompetency, it fails to consider Rule 17(c)(2). *Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012); *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003). If a plaintiff is incompetent and unrepresented, the court may not dismiss his claims on the merits. *Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009).

Here, dismissal is warranted because the third-amended complaint (and the previous pleadings sought to be incorporated into the third-amended complaint) fail to allege facts, accepted as true, that state a claim plausible on its face.

Concerning defendants Chris Clayton, Charles Cofer, and Collins Cooper, Wicks alleges no fact in any pleading. The only things known about them are their respective jobs or titles in the form section titled, "The Defendant(s)," in the original complaint.

Concerning defendant "Ms. Latoya," Wicks alleges he informed her of the sexual assault that had taken place in the DeKalb County jail, Doc. 3 ¶ 10, she knows about "the death threats out against" him, Doc. 3 ¶ 12, and, based on a complaint

filed by her and others, he was returned to the Nassau County jail on an order by Judge Foster to show cause why he could not remain at Golden Retreat, Doc. 3 ¶ 9. Without more, those alleged facts, accepted as true, fail to state a claim plausible on its face.

Concerning defendant Lewis, Wicks alleges he informed her of the sexual assault that had taken place in the DeKalb County jail, Doc. 3 ¶ 10, she "jumped or verbally yelled" at him for "constantly telephoning" her to ask questions about what he could and could not do, Doc. 3 ¶ 11, she knows about "the death threats out against" him, Doc. 3 ¶ 12, and, based on a complaint filed by her and others, he was returned to the Nassau County jail on an order by Judge Foster to show cause why he could not remain at Golden Retreat, Doc. 3 ¶ 9. Without more, those alleged facts, accepted as true, fail to state a claim plausible on its face.

Concerning defendant Powell, Wicks alleges she and Shaw were overheard telling a night security guard "to take [Wicks] away from the shelter and get rid of him the best way the gentleman knew how[,]" Doc. 3 ¶ 12, based on a complaint filed by her and others, he was returned to the Nassau County jail on an order by Judge Foster to show cause why he could not remain at Golden Retreat, Doc. 3 ¶ 9, and she stole his belongings and had someone else steal money from his credit union account without permission, Doc. 15 at 3. Without more, those alleged facts, accepted as true, fail to state a claim plausible on its face.

Concerning defendant Shaw, Wicks alleges Shaw is the owner of Golden Retreat, Doc. 3 ¶ 11, a resident named "Mr. West" told Shaw that Wicks had asked someone with the Florida Disability Organization to send Wicks a bankruptcy petition so he could avoid having to pay $1000 for living in a place that makes him sick, Doc. 3 ¶ 11, he and Powell were overheard telling a night security guard "to take [Wicks] away from the shelter and get rid of him the best way the gentleman knew how[,]" Doc. 3 ¶ 12, and, based on a complaint filed by Shaw and others, Wicks was returned to the Nassau County jail on an order by Judge Foster to show cause why

15

he could not remain at Golden Retreat, Doc. 3 ¶ 9. Without more, those alleged facts, accepted as true, fail to state a claim plausible on its face.

Allowing Wicks to amend the pleading to add alleged facts from his other filings is unwarranted. Despite many tries, including four in this action and one in his most recent previous action (see footnote 2), he has not clarified who he seeks to sue or for which alleged actions he seeks to sue them. Besides, the additional factual allegations from those filings, even with the factual allegations from the prior and current pleadings, state no claim that is plausible on its face. (The additional factual allegations from those filings are that defendants Powell and Shaw threatened his life (in a way he does not describe); defendants "Ms. Latoya"—a supervisor at Starting Point—and Lewis—a case manager at Starting Point—knew of threats "made by the defendants at the shelter"; Lewis told him "a red color vehicle was loaded with two black males looking for me at the shelter with a lie stating I owed them money and they wanted to come get me when I don't know anyone in the whole State of Florida and I have had my money, legal materials, and given food that I'm allergic too"; by "taking" him into the shelter, "Ms. Latoya" was supposed to provide him medication to stop bleeding from sexual assault and to address mental-health, seizure, and eye problems; Powell kept his court documents so he could not read them; and defendants "Ms. Latoya," Lewis, and Clayton tried to Baker Act him twice; Docs. 3-2, 17, 20.)

Because the record contains evidence Wicks is incompetent, the dismissal should be without prejudice and without addressing the merits of the claims. *See* Doc. 22-1 (Judge Foster's order adjudicating him incompetent to proceed in the grand-larceny case).[4]

---

[4] 42 U.S.C. § 1983 provides a cause of action against any person who, acting under the color of state law, deprives a person of a federal right. A constitutional claim under § 1983 is a tort claim subject to the statute of limitations governing a personal-injury claim in the state where the § 1983 claim is brought, *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 872 (11th Cir. 2017), which in Florida is four years, *Chappell*

16

Any future action by Wicks may meet the same fate as this action and his previous actions if he does not proceed under governing law, including the following.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 10(b) requires a party to state claims in numbered paragraphs, "each limited as far as practicable to a single set of circumstances," and, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count." Federal Rule of Civil Procedure 20(a)(2) allows a party to join defendants in an action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences … [and] any question of law or fact common to all defendants will arise in the action." A court cannot rewrite a deficient pleading for a pro se litigant or otherwise serve as his de facto counsel. *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

42 U.S.C. § 1983 provides a cause of action against any person who, acting under the color of state law, deprives a person of a federal right, but States and state officials sued in official capacities are not "persons" subject to § 1983 liability for damages, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and the State of Florida and its officials sued in their official capacities are absolutely immune from § 1983 liability for damages, *Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1511–13 (11th Cir. 1986). Florida's state attorneys and their officers are state officials. *Scheider v. Leeper*, No. 3:15-cv-364-J-34JRK, 2016 WL 916557, at *3 (M.D. Fla. Mar. 10, 2016) (unpublished) (citing cases).

---

*v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). Because Wicks alleges only events in 2017, there is no statute-of-limitations concern right now.

A state prosecutor in his individual capacity is absolutely immune from § 1983 liability for damages for an act that is an integral part of the judicial process. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). It "extends to a prosecutor's actions in initiating and pursuing a criminal prosecution and in presenting the state's case," even if the prosecutor, for example, filed an information without investigation, filed charges without jurisdiction, filed a baseless detainer, offered perjured testimony, suppressed exculpatory evidence, refused to investigate complaints about conditions of confinement, threatened more prosecutions, and tried to persuade the defendant to not sue officials in exchange for parole. *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979) (quoted authority and alterations omitted). A public defender does not act under color of state law within the meaning of § 1983 when he performs "a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 324–25 (1981).

And, as explained previously, the Court cannot order release regardless of confinement conditions, a complaint against DeKalb County would have to be filed in Georgia, *Younger* abstention prevents a federal court from enjoining a pending state criminal prosecution absent extraordinary circumstances, and a person alleging wrongdoing at detention facilities or the like must exhaust administrative remedies. *See* Doc. 5 at 3 n.1; Doc. 3 at 2, 4 (No. 3:17-cv-454).

## III.  Recommendation[5]

I recommend the Court dismiss the case without prejudice and direct the Clerk

---

[5]Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

of Court to terminate the pending motion, Doc. 20, and close the file.

**Entered** in Jacksonville, Florida, on December 5, 2017.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: David Bryant Wicks
Florida State Hospital
FA/E
P.O. Box 1000
Chattahoochee, FL 32324-1000